ROY & TITCOMB, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 29138.    Promulgated November 27, 1931.

*Theodore B. Benson, Esq.*, for the petitioner.
*Maxwell E. McDowell, Esq.*, and *Frank B. Schlosser, Esq.*, for the respondent.

OPINION.

SMITH: The respondent contends that under our decision in *Riggs National Bank*, 17 B. T. A. 615, the petitioner must reduce the basis for the determination of gain or loss upon the sale of its stockhold-

ings in the Nogales Electric Light & Power Company by the amount of the losses of that company during the period of affiliation, said losses having been used to reduce the petitioner's net income for prior years.

In *Riggs National Bank, supra,* the taxpayer sustained a loss of $94,949.07 on its investment in a subsidiary bank upon the liquidation of the subsidiary. Prior to liquidation the subsidiary had an operating loss which reduced the taxpayer's net income for the period of the taxable year 1922 during which the two banks were affiliated. The liquidation of the subsidiary bank was effected by the taxpayer taking over the assets of the subsidiary, said assets having a value at the time of $94,949.07 less than the cost of the Riggs National Bank's investment in the subsidiary. We held that the deductible loss was the amount of the investment loss less the operating loss of the subsidiary bank for the first part of 1922. Cf. *Shepard Co.,* 22 B. T. A. 1368. It is to be noted that the Riggs National Bank and the subsidiary bank were affiliated up·to the time the Riggs National Bank, in effect, absorbed the subsidiary—that event terminating the affiliation.

In the instant case the affiliated status of the petitioner and the Nogales Electric Light & Power Company ended with the year 1922. In 1923 the petitioner sold to outside interests its stockholdings in the Nogales Electric Light & Power Company. Prior to that event the affiliated status of the two companies had ceased.

On similar facts we distinguished *Riggs National Bank, supra,* in *Manatee Crate Co. et al.,* 22 B. T. A. 996, and held that, where stock purchased in 1918 by the parent company became worthless in 1924, in which year the two companies were not affiliated, the 1924 deductible loss of the parent company should not be reduced by losses of the affiliated company that had been used to reduce the net income of the parent company during the prior years when the two companies were affiliated. In *Manatee Crate Co. et al., supra,* we said:

* * * it has been held that the disposition of stock by a member of an affiliated group which results in termination of the affiliation may give rise to gain or loss, on the theory that the disposition occurred outside of the affiliated group. *Remington Rand, Inc.* v. *Commissioner,* 33 Fed. (2d) 77; *Riggs National Bank,* 17 B. T. A. 615; *Obenchain-Boyer Co.,* 18 B. T. A. 293. In the *Riggs National Bank* case we cited the *Remington Rand* case with approval, but reached the conclusion that under the peculiar facts present in the *Riggs* case the amount of the loss would be limited by excluding the operating losses sustained by the subsidiary company during the period of affiliation. It appears that the Riggs Bank owned 100 per cent of the stock of the Hamilton Bank and by reason thereof filed a consolidated return in which the operating losses of its affiliated company, the Hamilton Bank, were used as an offset against the profits of the Riggs Bank. When within the year the Hamilton Bank was liquidated and the Riggs Bank took over its assets, we held that the

Riggs Bank could not take a loss on the stock of the Hamilton Bank without first taking into account the losses of the Hamilton Bank of which it had already had the benefit for tax purposes.

In the instant case the King Company and the Conwell Company were not affiliated during the taxable year 1924 though they had been for several years prior thereto. The facts on which the affiliation was based in those prior years are not disclosed by the stipulation which is the basis for our decision. The 1924 Revenue Act permitted affiliation of two or more companies only when there was a 95 per cent ownership of stock. The test under the Revenue Acts of 1918 and 1921 was ownership and/or control of substantially all of the stock of two or more companies, and this difference in the requirements of the several revenue acts may account for the fact that the companies were not held to be affiliated in 1924. In any event the liquidation of the Conwell Company occurred at a time when the two companies were not affiliated, and on the stipulated facts it is apparent that the King Company suffered a loss of its entire investment of $25,500 and this amount constitutes a deduction within the meaning of the Revenue Act of 1924.

This proceeding is on all fours with *United Publishers Corporation* v. *Anderson*, 42 Fed. (2d) 781. The facts are succinctly stated in the opinion, which in so far as pertinent here, is as follows:

In the period 1917–1921 the plaintiff acquired the entire capital stock of Journal of Commerce Company at an aggregate price of $180,226.50. During the year ending April 30, 1922, it advanced to this subsidiary $80,865.35. In May, 1922, it sold its entire holdings in the subsidiary to outside interests. The consideration received was $100,000, but as part of the bargain the plaintiff canceled and released the $80,865.35 debt owed by the subsidiary. In substance and effect, therefore, the net amount received on the sale of the shares was only $19,134.65.

It further appears that during the years ending April 30, 1919, to April 30, 1922, inclusive, the plaintiff filed consolidated income tax returns wherein were included the operations of this subsidiary. The total losses of the subsidiary for these four years had been deducted from the plaintiff's gross income for these years.

In principle this case cannot be distinguished from *Remington Rand, Inc.* v. *Commissioner of Internal Revenue*, (C. C. A.) 33 F. (2d) 77, certiorari denied in 280 U. S. 591, 50 S. Ct. 39, 74 L. Ed. ———. It was there held that where a parent corporation sold its stockholdings in a subsidiary, the excess of the selling price over the cost of the stock was taxable as a profit realized by the parent. The fact that the parent had for several years filed consolidated returns was held immaterial, as was also the fact that the subsidiary had accumulated earnings during these years, which earnings had been included in the consolidated earnings and thus taxed. The government's contention was upheld in both respects. Here we have the exact converse. Here the sale of the stock was at a loss, and the operations of the subsidiary had been conducted at a loss over the years when consolidated returns were filed. The taxpayer is therefore warranted in insisting: First, that upon the sale of the Journal of Commerce stock it suffered a loss of $161,091.85, to the same effect as upon the sale of any other property; and, second, that the fact that the Journal of Commerce Company's operating losses had been taken advantage of by the plaintiff in its payment of taxes on the consolidated basis is of no consequence.

The sale upon which the petitioner claims a deductible loss did not occur within the period of affiliation (see *Farmers Deposit National Bank*, 5 B. T. A. 520); nor did it terminate the affiliation (see *Shepard Co.*, *supra*, and compare *Canal-Commercial National Bank*, 22 B. T. A. 541); it occurred after affiliation had terminated and the petitioner thereby sustained a deductible loss in the amount claimed. *Manatee Crate Co. et al.*, *supra*; *United Publishers Corporation* v. *Anderson*, *supra*.

*Judgment will be entered under Rule 50.*